UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.           Case No. 23-CR-69

JAIDEN A. HENNING,

      Defendant.

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION FOR PRETRIAL RELEASE**

  The United States of America, by and through its attorneys Gregory J. Haanstad, United States Attorney, and Katherine M. Halopka-Ivery, Assistant United States Attorney, hereby opposes the defendant's motion to vacate Magistrate Judge Nancy Joseph's detention order.

  The defendant, Jaiden A. Henning, has engaged in the trafficking narcotics, including fentanyl, and firearms, including machineguns, switches, and ghost guns, for a long period of time even after interactions with police. The armed drug trafficking organization (ADTO) has a recent history of engaging in gun violence. The armed drug trafficking organization (ADTO) has a history of engaging in gun violence, using a machinegun to murder one of its own members on March 27, 2023. The defendant faces a mandatory minimum 10-year term of imprisonment if convicted.

  The defendant's detention should be continued.

**I. Background**

 **A. Instant Offense**

Beginning in July 2022, Drug Enforcement Agency (DEA), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Waukesha Metro Drug Unit began investigating an ADTO operating in the Eastern District of Wisconsin involving among others Azjuan K. Meriwether, Dontrell Q. Franklin, the defendant, and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, electronic surveillance, recorded jail calls and other investigative tools, case agents learned the ADTO sold fentanyl, purported to be heroin, methamphetamines, cocaine, firearms, ghost guns (firearms without serial numbers making them untraceable), and Glock auto-sears devices (switches or buttons), which converts a semi-automatic firearm into a full-automatic firearm.

Since July 5, 2022, a confidential source (CS) and an undercover agent (UC) participated in about 18 controlled buys with members of the ADTO including the defendant. Between July 2022 and March 2023, the CS and/or the UC obtained approximately 750 grams of heroin, which also field tested positive for fentanyl; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO. Additionally, the UC obtained approximately 20 firearms from the ADTO, including ghost guns. Some of the firearms had a switch installed, and other times the UC just purchased a switch. The UC obtained approximately nine switches from the ADTO.

During the course of the investigation, case agents identified the defendant as one of the ADTO's sources for firearms and switches, which was collaborated by the defendant's own messages, surveillance, and content in his social media and cellphone.

Case agents obtained a search warrant for the defendant's Instagram account. The defendant posted numerous photos of himself with firearms, discussed details about firearms and switches, and arranged drug and firearms transactions. Figure 1 was posted on September 7, 2022,

along with several other photos, which showed the defendant at one of his residences, 3506 North 50th Street, Milwaukee, Wisconsin, with firearms and a large amount of cash. The defendant was unemployed at this point, according to his pretrial bond study. *See* ECF No. 24.

Case agents also found Figure 2, which depicts a black male, believed to be the defendant, holding what appears to be a Glock handgun and five separate Glock handgun firearm boxes at one of his residences.


(Figure 1)


(Figure 2)

Additionally, case agents located Instagram messages between the defendant and his co-conspirator, Azjuan Meriwether, consistent with the defendant engaging in the illegal sale of firearm and switches. For example, on September 11, 2022, Meriwether and the defendant discussed the purchase of a switch. They negotiated a price and Meriwether asked, "If it's the metal one."[1] The defendant replied "350 n it's metal." On September 12, 2022 (date of one of the undercover purchase operation), Meriwether began communicating with the defendant to arrange

---

1 Individuals are willing to pay top price for the metal switch as the metal switch holds up to the wear and tear of firearms compared to 3D printed plastic switch.

the transaction for the switch and discussed the purchase of additional switches. Approximately three hours later that same day, the UC purchased a metal Glock auto-sear device from Meriwether.

On October 5, 2022, the UC purchased two additional firearms from Meriwether, a loaded 40 Caliber Glock, model 22, with a switch attached; and a loaded Multi Caliber Franklin Armory, model pistol. Based on messaging thread between Meriwether and the defendant, these firearms were provided by the defendant around September 29, 2022. Case agents determined Meriwether provided the defendant cash and narcotics in exchange for the firearms. Prior to meeting with the defendant, Meriwether indicated he did not have enough cash for the firearms, offering instead to provide the defendant with "grits" of "b" or "g", which is slag for grams of "boy" (cocaine) or "girl" (heroin). The defendant told Meriwether bring a "scat," slang for scale, when he arrived at the meet location.

Additional messages between Meriwether and the defendant discussed the sale of five switches on the same date, October 19, 2022, that Meriwether offered to sell the UC multiple switches,. Meriwether later indicated he could not get the switches and shared a screen shot message, Figure 3, with the UC. Meriwether explained his source was involved in a fleeing incident and threw out the switches. This was consistent with messages located on the defendant's Instagram account.



(Figure 3)

Additional messages were also located between the defendant and Meriwether discussing how the defendant could build an AR-15 style firearm. On September 12, 2022, the defendant messaged Meriwether "I can build them mfs for $400 tho, I got the parts alr I just gotta go grab a lower, I got the upper ready." On November 16, 2022, with the defendant in Meriwether's vehicle, case agents purchased 27.6 grams of heroin and a loaded AM-15, Anderson Manufacturing Pistol, from Meriwether. The "lower" part of the firearms was purchased from a federal firearms licensed dealer (FFL) by the defendant's father just six days prior to this transaction. After the controlled purchase, case agents followed Meriwether to the defendant's family's address, 3508 North 55th Street, Milwaukee, Wisconsin, where the defendant was observed exiting Meriwether's vehicle. The defendant later discussed this transaction with another person on his cellphone.

During the course of the investigation into the ADTO, Meriwether and Dontrell Franklin discussed with the UC selling metal switches, but also plastic switches made by a 3D printer. Prior the defendant's arrest, Franklin discussed obtaining a 3D printer in order to manufacture switches. Also, just prior to the defendant's arrest, on March 27, 2023, Franklin used a Glock 19 with a switch to kill another ADTO member, Daniel Rodriguez-Perez.

On April 11, 2023, a federal grand jury in the Eastern District of Wisconsin returned a thirty-one-count indictment against Meriwether, Franklin, the defendant, and other members of the ADTO. The defendant was indicted on one count of conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of Title 21, United States Code Sections 841 and 846; one count of possession of a machinegun, in violation of Title 18, United States Code Section 922(o); one count of distribution of a controlled substance, in violation of Title 21, United States Code Section 841; and firearms trafficking, in violation of Title 18, United States Code Sections 933(a)(1) and 2(a).

On April 20, 2023, the defendant was arrested, and a search warrant was executed at his two residences, 3143 North 55th Street, Milwaukee, Wisconsin, and 3506 North 50th Street, Milwaukee, Wisconsin. Both residences contained items consistent with the defendant engaging in drug and firearms trafficking and the illegal possession of machineguns.

At the 3143 North 55th Street residence, case agents located a Glock 27, ammo, 3D printer, marijuana, additional magazine with loose ammo and other firearms accessories, tools used to install switches on firearms and a receipt for the AR-15 lower which was sold to the UC in November 2022. Case agents also located identifiers of the defendant at this location. At the defendant's other residence, 3506 North 50th Street, case agents located a gun box, tools used to install switches on firearms, ammunition, and lactose powder, which is used to cut heroin and was discussed by Meriwether.

Case agents also obtained a cellphone from the defendant at the time of his arrest. Case agents located content in the defendant's phone consistent with his involvement with the ADTO, him obtaining a 3D printer for manufacturing switches, and evidence of his ongoing involvement

6

in the illegal sale of firearms and controlled substances. Based on the messages obtained from his cellphone, the defendant was engaged in his illegal activities until his arrest and did not appear to have any plan to stop. Further, numerous photos from the defendant's phone were of drugs, firearms, molds of switches (Figure 4), and the defendant possessing firearms (Figure 5), and large amounts of cash (Figure 6).



(Figure 4)  (Figure 5)  (Figure 6)

B. **Defendant's History**

The defendant has prior police contacts. The defendant continued his criminal conduct regardless of these police contacts and the arrest of some of his co-conspirators, Franklin who was

arrested on August 2, 2022, and Meriwether who was arrested on December 27, 2022. In fact, during the course of this investigation, the defendant engaged in flight from law enforcement as described in the Instagram messages with Meriwether on October 19, 2022. Further, on October 26, 2022, the defendant was stopped by the Germantown Police Department following the defendant's passenger stealing a firearm magazine from Fleet Farm in Germantown, Wisconsin. Officers searched the vehicle and located the magazine and a backpack containing suspected marijuana. None of these prior run-ins with law enforcement, ADTO member's arrests, fleeing from law enforcement, or contact with law enforcement, stopped the defendant from engaging in his illegal conduct. Instead, the defendant continued to flood the community with illegal, dangerous machineguns and firearms, and engaged in drug dealing activities until his arrest.

### C. Procedural History

On April 20, 2022, the defendant appeared before Magistrate Judge Joseph for an Initial Appearance, Arraignment, and Plea hearing. ECF No. 29. The defendant was temporarily detained by Magistrate Judge Joseph. ECF No. 30. A detention hearing was held on April 21, 2022. At that hearing, Magistrate Judge Joseph heard arguments from the United States and the defendant and determined the defendant should be de detained. ECF No. 48. The defendant now seeks review of Magistrate Judge Joseph's detention order. ECF No. 70.

## II. Argument

A defendant may file a motion seeking review of a detention order after they have been "ordered detained by a magistrate judge[.]" 18 U.S.C. § 3145(b). While this Court's review of such a motion is de novo, the Court is not required to hold any additional hearings. *See United*

*States v. McGibney*, No. 1:20-CR-42-HAB, 2020 WL 4746179, at *3 (N.D. Ind. Aug. 14, 2020) (internal citations omitted).

The Court should deny the instant motion, without a hearing, and detained the defendant like Magistrate Judge Joseph determined on April 21, 2022, for the reasons outlined below.

### A. Each of the Relevant Factors Favors Detention

The ultimate question is whether any combination of conditions will reasonably assure the safety of the community, should the defendant be released. *See* 18 U.S.C. § 3142, *et seq*.

Given the offenses charged, it is presumed that no such conditions exist. *See* 18 U.S.C. § 3142(e)(3)(A). As explained by this Court in *United States v. Hendon*, "if the judicial officer finds probable cause to believe that the defendant committed a drug offense for which the maximum penalty is ten years or more, a rebuttable presumption arises that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community. An indictment charging such an offense is sufficient to trigger the presumption." 2009 WL 2912906, at *1 (E.D. Wis. Sept. 10, 2009).

Further, a presumption of detention is rebutted only "when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Thus, although the defendant does not bear the burden of persuasion, he must present evidence in order to defeat the presumption. And even if he does present evidence and rebut the presumption, "use of [the word rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release[.]" *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985).

The Court's analysis is further guided by four familiar factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Each factor weighs heavily in favor of detention in this case. Especially now given the evidence located on the defendant's own phone, which was not known to the United States or Magistrate Judge Joseph when the defendant was initially ordered detained.

1.   **Nature and Circumstances of the Offense**

The nature and circumstances of the instant offenses are aggravated, in that they involved a controlled substance and firearms. 18 U.S.C. § 3142(g)(1). An offense that carries a 10-year mandatory minimum is indeed very serious. Further, though advertising the drugs as heroin, all of the heroin obtained during the controlled buys tested positive for fentanyl. In fact, Meriwether described to the CS how he would cut the drugs with fentanyl.

Further, the defendant was not only just engaged in dangerous drug sales, but he was one of the sources of firearms and switches for the ADTO. Anyone who doubts the dangerousness of a machinegun possessed with drug trafficking need only watch a YouTube video of what it looks like when a Glock pistol with a fully-automatic switch is fired. The defendant engaged in the ongoing drug and firearms trafficking and demonstrated no signs of stop ceasing his activities even after the contacts with police and arrest of co-conspirators. In fact, evidence from the defendant's own phone indicates he was hoping to increase his illegal business with his recently purchased 3D printer and the manufacture of these deadly devices. The type and volume of firearms, as well as controlled substances, implicated by the controlled buys, the defendant's own messages, items

10

located at his residences, and his phone, demonstrate an active drug dealer and large-scale illegal firearms trafficker.

This factor favors detention.

### 2. Weight of the Evidence

The weight of the evidence in this case also supports detention. As described above, there is very substantial evidence that the defendant committed the charged offenses, including physical and electronic surveillance, the defendant's own messages on Instagram, the items located at his residences, and messages and photos on his phone.

This factor favors detention.

### 3. History and Characteristics of the Defendant

The defendant's history and characteristics are at least more mixed, but still support detention.

The defendant does not have prior criminal convictions; however, the defendant has had prior contact with the criminal justice system. During the course of the investigation the evidence demonstrated the defendant fled from officers and disposed of switches during his flight. Further, the defendant was not charged, but stopped by police following a report of a theft of a firearm magazine. Inside the defendant's vehicle law enforcement found controlled substances. This occurred on October 26, 2022. Further, other members of the ADTO were arrested during the course of this investigation. None of this deterred the defendant. The defendant even acknowledged in text messages that Meriwether was arrested in December 2022. The defendant described how he worked with Meriwether and that Meriwether was likely going to be in custody for a long time.

Neither law enforcement contact or the arrest of other ADTO members stop the defendant from engaging in his illegal and dangerous business. Instead, at the time of his arrest the evidence at his residences and on his phone indicated he began to manufacture switches and continued to engage in the illegal sale of firearms and drugs.

The defendant provided 3143 North 55th Street as his residence. *See* ECF No. 24. This is inconsistent with evidence obtained during the investigation and the defendant's own text messages where he stated he was kicked out of this residence. Further the defendant indicated he was only recently employed. *Id*. On the defendant's phone and Instagram, he has photos with large sums of money, which would be consistent with the defendant obtaining money from illegal sale of firearms, switches, and drugs.

The defendant cited his support family and girlfriend to weigh in favor of release. Arguably this factor might *most* favor the defendant's release, but it is actually a strong indication that he was properly detained and should remain detained. These positive influences and family support were present already during the eight-month investigation when the defendant fled from law enforcement, sold machineguns, began steps to manufacture machineguns, and possessed and sold controlled substances. He was not any less dangerous to the community because of these facts prior to his arrest. Further evidence located at his residences, in conjunction with messages from the defendant's social media and phone, demonstrate he would use these locations to engage in his criminal activity. These supports factors do not weigh in favor of release, given they were present previously while the defendant engaged in dangerous behavior risking the community.

This factor favors detention.

### 4. Nature and Seriousness of the Danger to Individuals and the Community

The defendant also poses an acute risk of endangering the public through continued drug trafficking. Congress chose to apply the presumption of detention set out in Section 3142 to the very drug trafficking offense with which the defendant is charged. Congress did so because such crimes not only endangered individuals but also, more generally, *the community* – i.e., not only is violence inherent to drug trafficking, like in this case in which one of the members of the ADTO was murdered by another using a machinegun, drug trafficking itself is dangerous to the community for purposes of the statute.

> The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.' The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, *while the language referring to the safety of the community refers to the danger the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence . . . .* The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'

*United States v. Dominguez*, 629 F. Supp. 701, 707 (N.D. Ind. 1986) (citing 1984 U.S. Cong. Code & Admin. News, pp. 3195–6); *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1986); *United States v. Hawkins*, 617 F.2d 59 (5th Cir. 1980), *cert. denied*, 449 U.S. 952 (citations omitted) (emphasis added).

Thus, large-scale drug trafficking itself, without any independent indicia of violence, endangers the community within the meaning of dangerousness as used in Section 3142 and carries the associated presumption of detention. As explained by the Seventh Circuit, "in creating this presumption, Congress determined that the type of drug trafficking alleged in this indictment is a serious danger to the community. Especially significant is the drug network's ability to continue to function while the defendant awaits trial." *Portes*, 786 F.2d at 764–65.

Further, with regard to the dangerousness of the substances in which the defendant and the ADTO was dealing, it is no secret that overdose deaths have been and continue to be on the rise. According to the Centers for Disease Control and Prevention, nearly 108,000 people died from drug overdoses in 2021, which was up 15% from 2020. Approximately 80,000 of these deaths involved synthetic opioids, primarily fentanyl. Between 2019 and 2020, drug overdoses rose a staggering 30%.[2]

In 2021 in Milwaukee County alone, there were 623 fatal overdose deaths confirmed by the Milwaukee County Medical Examiner's Office. To date, the 2022 total confirmed overdose deaths (609 as of April 14, 2023) foreshadow a likely increase in this number. The starkest rise in drug fatalities in Milwaukee County involves the use of fentanyl.[3] Fentanyl was identified in 78% of the county's overdose deaths from 2020 to 2022, according to data from the medical examiner's office.[4] Further, just between April 1, 2023 and April 6, 2023, 17 people died from suspected fentanyl overdose deaths, which the Medical Examiner's Office is still in the process of confirming.[3] Milwaukee County Chief policy advisor noted that this translated to one overdose death every four hours, when on average the county experiences one every 16 hours.

One kilogram of fentanyl—less than the estimated amount the ADTO trafficked—has the potential to kill 500,000 people.[5] Additionally, the price of one kilogram of the synthetic opioid fentanyl, as compared to a kilogram of heroin, is generally much less expensive, which has resulted in the drug being used to adulterate already dangerous drugs with consistent frequency. This is

---

2 *See* https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2022/202205.htm (last visited May 13, 2023).
3 *See* https://county.milwaukee.gov/EN/Vision/Strategy-Dashboard/ Overdose-Data (last visited May 13, 2023).
4 https://www.jsonline.com/story/news/2023/04/04/milwaukee-county-officials-warn-of-fentanyl-after-overdose-deaths/70080432007/ (last visited May 13, 2023).
5 https://www.dea.gov/resources/facts-about-fentanyl (last visited May 13, 2023).

exactly what this ADTO did and would brag about at times with the CS. The effects of these substances are widely known, and those who traffic in them, take a cold, calculated risk to profit at the expense of human life.

Additionally, the defendant's other illegal conduct demonstrates his dangerousness to the community. As previously described, the defendant indicated to Meriwether he was involved in a flee incident. Fleeing and reckless driving has plagued the Milwaukee community. Data from the Milwaukee County Medical Examiner's Office indicated there were 88 motor vehicle deaths in 2022. According to the Wisconsin Traffic Operations and Safety Laboratory, 32 of those deaths involved pedestrians.[6] Every week in January 2023, at least one person died in a crash in Milwaukee, including a one year old baby in a stolen car. Most of the deaths were a result of reckless driving.[7] The defendant's decision to engage in fleeing from law enforcement demonstrates his willingness to risk the safety of our community.

Finally, the defendant's conduct is even more dangerous, because he engaged in the illegal sale of firearms, including machineguns, with other ADTO members. As previously discussed, the defendant did not stop dealing in drugs and dangerous firearms when co-conspirators were arrested. The defendant remained undeterred by major setbacks as demonstrated by the items located at the defendant's residences and in his phone. He was not deterred. Rather, the defendant instead planned to increase his business by obtaining a 3D printer to manufacture these weapons. The defendant's conduct demonstrates the dangerousness risk he poses to the community.

This final factor weighs in favor of detention also.

---

6 *See* https://www.wpr.org/milwaukee-gets-federal-state-funds-help-address-reckless-driving-traffic-deaths (last visited May 13, 2023).
7 *See* https://www.wisn.com/article/one-month-eight-deadly-crashes-in-milwaukee/42750408# (last visited May 13, 2023).

## **Conclusion**

The United States respectfully requests that the Court deny the defendant's motion for the pretrial release of the defendant and affirm Magistrate Judge Joseph's detention order.

Respectfully submitted this 15th day of May, 2023.

        GREGORY J. HAANSTAD
        United States Attorney

By:    *s/ Katherine M. Halopka-Ivery*
        Katherine M. Halopka-Ivery (WBN Bar No. 1075311)
        Assistant United States Attorney
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700