UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 2023-CR-069

TRENELL HENNING,

Defendant.

---

**PLEA AGREEMENT**

---

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Katherine M. Halopka-Ivery and Patricia Daugherty, Assistant United States Attorneys, and the defendant, Trenell Henning, individually and by attorney Thomas Erickson, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

**CHARGES**

2. The defendant has been charged in one count of a thirty-one-count indictment, which alleges violations of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2). The defendant has also been charged in an information, which alleges a violation of Title 21, United States Code, Section 844(a).

3. The defendant has read and fully understands the charges contained in the indictment and information. He fully understands the nature and elements of the crime with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following information set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES THAT:**

On or about April 20, 2023, in the State and Eastern District of Wisconsin,

**TRENELL HENNING,**

knowingly and intentionally possessed marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 844(a).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

**PENALTIES**

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: one year imprisonment, or a minimum fine of $1,000 and a maximum fine of up to $100,000, and a maximum term of one year of supervised release. The charge in the Information also carries a mandatory special assessment of $25.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF THE INDICTMENT

9. The government agrees to move to dismiss the indictment as to this defendant at the time of sentencing.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of possession of marijuana as set forth in the Information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant possessed a controlled substance on April 20, 2023; and
> Second, that the defendant's possession of the controlled substance was knowing and intentional.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 5. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea,

the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

**Sentencing Guidelines Calculations**

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

**Relevant Conduct**

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

17. The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is less than 1,000 grams of marijuana, a Schedule I controlled substance.

**Base Offense Level**

18. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the Information is 6 under Sentencing Guidelines Manual § 2D1.1(c)(17).

## Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

## Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The parties agree to recommend a sentence of time served.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court

will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

### Fine

27. The parties agree to recommend to the sentencing court that no fine be imposed.

### Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $25 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an

appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

**Further Civil or Administrative Action**

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

**GENERAL MATTERS**

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense

on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## Further Action by Internal Revenue Service

39. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.


Case 2:23-cr-00069-LA Filed 02/11/25 Page 11 of 15 Document 194

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2/11/25

TRENELL HENNING
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/11/25

THOMAS ERICKSON
Attorney for Defendant

For the United States of America:

Date: 2/11/25

for GREGORY J. HAANSTAD
United States Attorney

Date: 2/11/25

KATHERINE M. HALOPKA-IVERY
PATRICIA I. DAUGHERTY
Assistant United States Attorneys

## ATTACHMENT A

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt. These facts are based upon information provided by confidential informants, the anticipated testimony of cooperating sources and law enforcement agents, electronic surveillance, records obtained via grand jury subpoenas, and physical and electronic evidence seized throughout the investigation of the conspiracy. The information is provided for the purpose of setting forth a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

### Overview

Beginning in July 2022, Drug Enforcement Agency (DEA), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Waukesha Metro Drug Unit, hereinafter referred to as "case agents," began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin (WI) which involved Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna J. WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Tasha M. BROWN, Laron N. KING, Shannone D. BROWN, Jaiden HENNING, and others. Jaiden HENNING ("J. HENNING") is the son of Defendant Trenell HENNING ("T. HENNING"). Through confidential sources, undercover controlled buys, physical surveillance, electronic surveillance, and record jail calls case agents learned the ADTO sold fentanyl, purported to be heroin; methamphetamine; cocaine; ghost guns; and switches. Case agents also determined that members of the ADTO used multiple locations and multiple vehicles, including rental vehicles, to store and distribute their narcotics and firearms throughout the Eastern District of Wisconsin.

Starting on July 5, 2022, a confidential source (CS) and an undercover agent (UC) engaged in 18 controlled buys with members of the ADTO including MERIWETHER, FRANKLIN, WILLIAMS, RODRIGUEZ-PEREZ, NICHOLS, J. HENNING and KING. Between July 2022 and March 2023, CS and/or UC obtained approximately 790 grams of heroin, which also field tested positive for fentanyl; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys. Additionally, during 10 of the controlled buys, the UC obtained approximately 20 firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm. Other times, the UC purchased a standalone Glock auto-sear device, i.e., a machinegun conversion device. The UC obtained approximately nine Glock auto-sear devices from the ADTO. ATF test fired the Glock auto-sear devices and determined that they converted a semi-automatic firearm into a fully automatic firearm, meaning one pull of a firearm trigger caused the firearm to fire multiple bullets.

Case agents identified Jaiden HENNING, Trenell HENNING's son, as one the ADTO's Glock auto-search devices and firearms sources. Case agents reviewed conversations between MERIWETHER and J. HENNING, consistent with them engaged in firearm trafficking.

**a. November 16, 2022 Transaction with MERIWETHER and J. HENNING–Counts Fifteen and Sixteen**

On September 12, 2022, J. HENNING, messaged MERIWETHER "I can build them mfs for $400 tho, I got the parts alr I just gotta go grab a lower, I got the upper ready." Based on case agents training and experience, J. HENNING's statements are consistent with J. HENNING discussing the manufacturing of an AR-15 style firearm. The "lower" part of an AR-15 style platform is classified as the firearm and can be purchased from a federal firearms licensed dealer (FFL). The "upper" can be purchased online and wherever people sell gun parts. Assembling a lower and upper complete an AR-15 style platform rifle. Based on training and experience, case agents are aware people who are able to legally purchase firearms, will buy the lower from an FFL. The remaining parts will then be purchased separately to assemble a fully functioning rifle.

On November 16, 2022, MERIWETHER met CS and the UC at North 55th and West Keefe Avenue, Milwaukee, WI. MERIWETHER approached the UC's vehicle and entered via the rear driver's side door. MERIWETHER had a large black duffle style bag with him and completed the transactions with the UC and CS. MERIWETHER provided 27.6 grams of heroin (later field tested positive for fentanyl) to CS. CS provided MERIWETHER with $5,000 to cover the purchase of the 27.6 grams of heroin and as a buy-in to a "brick of heroin" (approximately 1,000 grams). MERIWETHER provided the UC with a firearm, later identified as an AM-15, Anderson Manufacturing Pistol with serial number 22019470, with 26 rounds of ammunition. UC provided $1500 to MERIWETHER in exchange for the AM-15.

After this controlled buy, case agents surveilled MERIWETHER to the address of XXXX North 55th Street, Milwaukee, WI, Trenell HENNING's and J. HENNING's residence. Case agents observed J. HENNING exit MERIWETHER's vehicle and walk to the side door of the duplex.

The firearm purchased from MERIWETHER was originally obtained by the defendant, T. HENNING, just six days prior to this transaction between J. HENNING and MERIWETHER.

Case agents obtained ATF Form 4473 from Fleet Farm located at NXX WXXXXX County Line Road, Germantown, Wisconsin detailing the purchase of one Anderson Manufacturing receiver, model AM-15, bearing serial number 22019470. On November 4, 2022, T. HENNING completed the paperwork for the firearm. Initially, T. HENNING was delayed by the FBI NICS system. T. HENNING then obtained the firearm from Fleet Farm on November 10, 2022. On the Fleet Farm Firearms order form, T. HENNING listed his phone number as 414-XXX-XXX5. Under question 11a asking "Are you the actual transferee/buyer of the firearm(s) listed?" T. HENNING marked "yes". Six days later, this firearm was sold to UC by MERIWETHER while J. HENNING waited in MERIWETHER's vehicle.

T. HENNING admits that he purchased the firearm, knowing he did not intend to keep the firearm, but instead was planning to transfer this firearm to another person (J. HENNING).

On April 20, 2023, case agents executed a federal search warrant at T. HENNING's residence. Inside the residence, case agents located numerous items consistent with firearms trafficking, include a 3D printer. Also located at T. HENNING's residence was marijuana in the dining room and one of the bedrooms, consistent with personal use.

T. HENNING admits to possessing this marijuana on April 20, 2023, at his residence, knowing that it was a controlled substance. T. HENNING further admits that he possessed this marijuana for personal use and that it weighed less than 1,000 grams.